1
2
3
4
5
6
7
8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 ERICA K. LEAL,    )    Case No. 1:07-cv-01562-TAG
                   )

12        Plaintiff,    )    MEMORANDUM DECISION AND ORDER
                   )    ON PLAINTIFF'S APPEAL FROM

13     vs.    )    ADMINISTRATIVE DECISION
                   )

14 MICHAEL J. ASTRUE,    )    ORDER DIRECTING CLERK TO ENTER
Commissioner of Social Security.   )    JUDGMENT IN FAVOR OF DEFENDANT

15                    )    AND AGAINST PLAINTIFF
                   )

16 _____)

17       Plaintiff Erica K. Leal ("Claimant" or "Plaintiff") seeks judicial review of an administrative

18 decision of the Commissioner of Social Security ("Commissioner") denying her claim for

19 supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Claimant

20 filed her complaint on October 23, 2007. (Doc. 1). The matter has been fully briefed by the parties.

21 (Docs. 17, 18, 19).

22       Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

23 before a United States Magistrate Judge, and by order dated December 3, 2007 and docketed on

24 December 4, 2007, this action was assigned to the United States Magistrate Judge for all further

25 proceedings. (Doc. 11).

26                 **PROCEDURAL HISTORY**

27       On March 31, 2005, Claimant filed an application for supplemental security income.

28 (Administrative Record ("AR") 13). Claimant alleged a disability onset date of January 1, 2004 and

1

initially described her disabling illnesses, injuries or conditions as "phobia of being around people, schizophrenia, anxiety." (AR 61-62). Claimant reported that these alleged disabilities limited her ability to work because she became paranoid and extremely anxious when around other people. (AR 62). The Commissioner initially denied her application in late July of 2005[1] (AR 43-47) and her subsequent request for reconsideration (AR 50). On December 14, 2005, Claimant filed a request for a hearing before an administrative law judge ("ALJ"). (AR 56). ALJ Stephen W. Webster heard the matter on March 14, 2007, taking testimony from both Claimant and vocational expert, Jose Chaparro. (AR 159-173). Claimant was represented by counsel at that hearing and at all other times throughout these proceedings since September 9, 2005. (AR 36).

On April 5, 2007, the ALJ issued his written findings and orders, concluding that Claimant was not disabled under Section 1614(a)(3)(A) of the Act. (AR 19, 13-19). Claimant requested the Appeals Council to review the ALJ's decision on May 24, 2007, which request was subsequently denied on September 7, 2007. (AR 4, 8). The ALJ's decision became the Commissioner's final decision in the matter. Claimant timely filed this action for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## SCOPE AND STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision (made through the ALJ) when the determination is not based on legal error and is supported by substantial evidence. See *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services* , 812 F.2d 509, 510 (9th Cir. 1987). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 559, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health & Human*

---

[1] The initial denial letter indicated Claimant's alleged disabilities included phobia, schizophrenia, anxiety, depression, insomnia, carpal tunnel syndrome, bipolar disorder and attention deficit disorder. (*Id.*)

2

*Services*, 846 F.2d 573, 576 (9th Cir. 1988.)  And it "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may  reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court will consider the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at p. 400.  If the evidence supports more than one rational interpretation, one of which supports the Commissioner's decision, that decision must be upheld.  *Allen V. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive (*Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987)) unless an improper standard was applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## RELEVANT LEGAL AND REGULATORY FRAMEWORK

For purposes of Title XVI of the Act, the person seeking SSI benefits must demonstrate that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act.  (20 C.F.R. § 416.920(a).)  Step one determines

whether the claimant is engaged in substantial gainful activities. (20 C.F.R. § 416.920(a)(4)(i).) If s/he is, benefits are denied. If s/he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. (20 C.F.R. § 416.920(a)(4)(ii).) If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. (*Id.*) If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. (20 C.F.R. § 416.920(a)(4)(iii).) If the impairment not, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. (20 C.F.R. § 416.920(a)(4)(iv).) If the claimant is able to perform his or her previous work, s/he is not disabled. (*Id.*) If the claimant cannot perform this work, the fifth and final step in the process determines whether s/he is able to perform other work in the national economy in view of his age, education and work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287 (1987). (20 C.F.R. § 416.920(a)(4)(v).)

The initial burden of proof rests upon a claimant to establish that she "is entitled to the benefits claimed under the Act." *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)(citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." *Tackett v. Apfel*, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him or her from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Here, the ALJ found that Claimant had not engaged in any substantial gainful activity since

4

January 1, 2004, the alleged disability onset date, or at any other time relevant to his decision.  (AR 15).  The ALJ also found that Claimant had severe impairments of bipolar disorder and depression; that Claimant's carpal tunnel syndrome was a slight impairment that had only minimal, if any, effect on her ability to work; and that Claimant's severe impairments did not meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (AR 15).  Rejecting Claimant's allegations regarding her subjective limitations as not totally credible, the ALJ found that Claimant had the residual functional capacity to perform low stress jobs with no established exertional or postural limitations.  (AR 16).  He also found that Claimant had no past relevant work.  (AR 18).  The ALJ further found that because Claimant was a younger individual with a limited education but able to communicate in English, and although she had no transferable skills given her lack of any relevant work history (20 C.F.R. § 416.968), given Claimant's residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform (20 C.F.R. §§ 416.960(c), 416.966; SSR No. 85-15).  (AR 18).  The ALJ's conclusion was reached on the basis of testimony given by a vocational expert at the administrative hearing.  (*Id.*)  The ALJ ultimately found that Claimant was not disabled.  (20 C.F.R. § 416.920(g).)  (AR 19).

## ISSUES

In her Opening Brief ("AOB"), Claimant asserts the following errors:

1.   The ALJ erred in giving little weight to the opinion of Dr. Gregory, Claimant's treating physician;

2.   The ALJ failed to find that the Claimant had limitations of lifting and carrying 20 pounds occasionally and ten pounds frequently;

3.   The ALJ failed to find that the carpal tunnel syndrome [*sic*] was a severe impairment; and

4.   The ALJ improperly gave little weight to the third party witness statement by Claimant's grandmother, Katherine Wopinski.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by Claimant and the Commissioner.  Only those facts critical to deciding the

///

issues before this Court will be addressed in the body of this opinion.  However, some general information will be provided here.

Over the course of this adjudication, Claimant's allegedly disabling conditions have come to be identified, primarily, as a nerve compression disorder of her hands, i.e., carpal tunnel syndrome or symptoms; depressive and/or bipolar disorder with features of mood swings, heightened anxiety and panic attacks and extreme social isolation.  The consultative examiner also diagnosed Claimant with post-traumatic stress disorder.  Aside from glasses, Claimant used no assistive devices.  She was taking Geodon and Trazodone to help manage the symptoms of her mental health disorder(s) but did not participate in any counseling as part of that treatment.  (AR 166).  Claimant testified that she found the medication at least partially effective in calming her down but admitted that it did not "work for my past and stuff and everything I've been through."  (AR 167).  Claimant took no medication for the physical pain she experienced in connection with her wrist disorders.  (AR 166).

Claimant was born on July 7, 1986.  At the time she filed for supplemental security income benefits under Title XVI of the Act, Claimant was nineteen years old; she was seventeen years old on the date her alleged disability began.  The highest grade of formal education Claimant completed was the ninth or tenth grade; she was not a special education student during her school years.  Claimant did not graduate high school or obtain a general equivalency degree.  (AR 165).  Claimant did not obtained any vocational or trade schooling.  (AR 165).  Claimant spoke, read, and wrote in English, and was right-handed.  (AR 162).  She had no work history.  (AR 167-168).  At the time of the administrative hearing, Claimant was living with her husband and their four-year-old daughter in an apartment.  (AR 162-164).  Claimant did not have a driver's license because of problems with her vision, i.e., she needed corrective lenses to see properly.

## DISCUSSION

### A.  *Issues Related to Carpal Tunnel Syndrome/Symptoms*

   1.   Severity of Impairment

Claimant argues that ALJ's failure to conclude that Claimant's carpal tunnel syndrome constituted a severe impairment was error.  Reduced to its essential elements, Claimant's argument is that the ALJ's decision on this issue was not made according to correct legal standards because it

failed to analyze and evaluate properly the medical source statements. Claimant's argument that "the ALJ failed to find that the claimant had limitations of lifting and carrying 20 pounds occasionally and 10 pounds frequently" is very closely linked to the merits of the severity of impairment argument because, at least as Claimant has argued the issue, these exertional levels are functional limitations of her carpal tunnel syndrome impairment. For that reason, the Court will first address the severity argument.

Title 20 C.F.R. § 416.921(a) provides that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." In this case, the ALJ found that carpel tunnel syndrome was a slight impairment that had only minimal, if any, effect on Claimant's ability to work. (AR 15). On this specific issue – the severity of allegedly disabling condition of carpal tunnel syndrome –, the ALJ reasoned:

> In June 2005, Dr. Sonal Shah consultatively examined the claimant. The claimant told Dr. Shah that she had carpal tunnel syndrome and used braces, but was unable to get them because she refused to see a doctor. She said she had difficulty writing due to sharp pains at the wrist bilaterally and had difficulty grasping things or holding a cup, but she denied difficulty while buttoning clothes ... . On physical examination, the claimant's wrist joints were tender with positive Tinels and Phalen test on the left hand only. There was bilateral hyperthenar atrophy, but motor strength was 5/5 in the upper and lower extremities. Dr. Shah diagnosed bilateral carpal tunnel syndrome, bipolar disorder, and depression ... . Dr. Shah opined the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk for six hours ... . The State Agency physicians concluded the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and walk for six hours in an 8-hour day, occasionally reach and handle with the left upper extremity, never climb ladders, ropes, and scaffolds, and should avoid concentrated exposure to hazardous heights ... . I give Dr. Shah and the State Agency physicians' opinions little weight as the record reflects no actual treatment for this alleged impairment. The office visit notes reflect numerous contacts on which the Claimant did not specify any particular complaint, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date. I therefore find that the Claimant's carpal tunnel syndrome is not severe as that term is defined in the Regulations. (AR 15-16.)

Claimant may well have physical anomalies, identified through objective medical tests, that supported a diagnosis of carpal tunnel syndrome. However, that fact alone does not equate to

7

disability.  "The mere existence of an impairment is insufficient proof of a disability." *Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)(citation omitted).  It is the claimant's burden to prove that

an impairment is of sufficient severity and functional impact as to be disabling.  (*Id.*)  Here, the

record contains sufficient evidence to support the ALJ's conclusion that no such showing was made.

Dr. Shah diagnosed Claimant with bilateral carpal tunnel symptoms as a result of a physical

examination.[2]  Dr. Shah conducted that examination when asked to provide a consultative opinion to

assist in the administrative decision-making process.[3]  Although Dr. Shah concluded that Claimant

had some exertional limitations, i.e., Claimant could lift and carry 20 pounds occasionally and ten

pounds frequently, and stand and walk for six hours (AR 15-16), it is not clear from Dr. Shah's

report whether these limitations were the result of a nerve compression disorder, Claimant's weight

relative to her height (AR 110), or her general claims of weakness and "no energy" (*id.*).  Dr. Shah

did not assess Claimant as having any manipulative limitations or as requiring any assistive devices

to function in a work setting.  (AR 112).[4]

Drs. Ian Ocrant and Sadda Reddy, the State Agency non-examining physicians, assessed

Claimant to have some exertional and nonexertional limitations relating to Claimant's carpal tunnel

symptoms.[5]  (AR 130-141).  The record discloses that Drs. Ocrant and Reddy reached differing

conclusions about Claimant's nonexertional limitations than those assessed by Dr. Shah but Drs.

Ocrant and Reddy appear to have based theirs solely on Dr. Shah's clinical findings.  Thus, the

---

[2]  Dr. Gregory did not evaluate or treat Claimant for her wrist/hand disorder.

[3]  Prior to Dr. Shah's examination, there was no medical evidence in this record showing that any medical clinician had diagnosed this condition in Claimant.

[4]Social Security Ruling No. 96-3p provides that a claimant's subjective symptoms will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence that he or she has a medically determinable impairment and that the impairment could reasonably be expected to produce the symptoms described by claimant.  A credible interpretation of the evidence in this case on this issue might be Dr. Shah concluded that while there was objective medical evidence that could support a diagnosis of carpal tunnel symptoms (AR 112), this medical evidence could not reasonably be expected to produce the full constellation of symptoms described by Claimant.

[5]  Specifically, the State Agency physicians concluded that Claimant could lift and carry 20 pounds occasionally and ten pounds frequently, sit, stand and walk for six hours in an eight-hour day, occasionally reach and handle with the left upper extremity, never climb ladders, ropes, and/or scaffolds, and should avoid concentrated exposure to hazardous heights.  (AR 15).

validity of Drs. Ocrant's and Shah's conclusions with respect to the severity of Claimant's nerve compression impairment rests entirely on that of Dr. Shah. *Pitzer v. Sullivan,* 908 F.2d 502, 506 n.4 (9th Cir. 1990) – "The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations and conclusions of an examining physician [citation omitted]." Therefore, the Court analyzes the sufficiency of the ALJ's treatment of Dr. Shah's opinion.

Clear and convincing reasons are required in order to reject the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). While the factual basis for the ALJ's rationale might be seen as quantitatively limited, the import and impact of those facts are sufficiently compelling. What the ALJ recognized was a fundamental inconsistency in the evidence as a whole.[6] Beginning on March 29, 2005 and continuing through December of 2006, Claimant was treated ten times by Dr. Jack Gregory at the Sequoia Family Medical Center. (AR 115-121, 144-146). The medical case record contains no other records that might indicate Claimant had any other treating physician. (AR1-173). Nor does the medical case record contain evidence that Claimant had been earlier treated for this allegedly disabling condition by some other health care. (*Id.*) In fact, Claimant testified at the hearing that she saw no other health care providers for diagnosis or treatment during the period in question. (AR 166).

According to the Sequoia Family Medical Center clinic records produced by Claimant and admitted into evidence at the hearing, at each of these visits, Dr. Gregory appears to have conducted a physical and psycho-social assessment of Claimant. (AR 115-121, 144-146). Each time an assessment or diagnosis was given. (*Id.*) Each time it appears that Claimant was asked and/or offered some information as to her current health status. (*Id.*) In none of Dr. Gregory's clinic notes is there any suggestion, let alone statement, that Claimant had problems of any kind with respect to

---

[6] 20 C.F.R. § 416.927 ("Evaluating Opinion Evidence"), subsection (c), provides, in pertinent part, that "[a]fter we review all of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows. (1) If all of the evidence we receive, including medical opinion(s), is consistent, and there is sufficient evidence for us to determine whether you are disabled, we will make our determination ... based on that evidence. (2) if any of the evidence in your case record, including medical opinion(s) is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on that evidence. ... (4) When there are inconsistencies in the evidence that cannot be resolved. ... we will make a determination or decision based on the evidence we have."

her hands.  (*Id.*)  Whatever might (or might not) have been wrong with Claimant's hand functions, they apparently did not warrant mention to her treating physician during any one of these ten visits, nearly all of which occurred after Claimant had filed an application for SSI benefits.[7]  (*Id.*)

Curiously, Claimant's medical records reflect that Claimant told Dr. Shah that Claimant needed wrist braces for her hands because of the carpal tunnel problems but was unable to get those braces because she refused to see a doctor.  (AR 15, 109).  One reasonable inference that could properly be drawn from these facts was that Claimant's alleged hand disorder did not interfere with her ability to perform basic exertional and non-exertional functions.  Claimant's lack of treatment-seeking behavior for an allegedly disabling problem, at a minimum, creates considerable uncertainty about the veracity of Claimant's subjective complaints of wrist pain and manual weakness as well as some uncertainty about whether Dr. Shah's diagnostic findings properly correlated with the degree of functional impairment Dr. Shah attributed to the nerve compression disorder.  Resolution of the ambiguity in this evidence was the province and responsibility of the ALJ.  *Morgan v. Commissioner*, 169 F.3d 595, 603 (9th Cir. 1999).  Because the ALJ had the authority to resolve conflicts or ambiguities in the medical evidence, the Court must defer to the ALJ's decision.  The Court concludes that the ALJ's decision is supported by substantial evidence in the record and was the result of application of proper legal standards.

2.      Claimant's Credibility

Claimant further contends that the ALJ failed to comply with this Circuit's case law when he did not provide specific and convincing reasons in discounting Claimant's credibility.  (AOB at p. 10).  Although the ALJ did not actually state that Claimant's subjective complaints about her hand and wrist limitations were accorded little or no weight, it is quite clear from various aspects of the

_____

[7]  Evidence that indicates a heightened level of subjective certainty about this factual conclusion is reflected by these considerations: (1) Dr. Gregory, Claimant's only treating physician *and* the only acceptable medical source having any kind of a longitudinal health care relationship with Claimant, prepared the notes recording the content of the contact made at each of the visits; (2) Dr. Gregory's clinic notes appear to have been made at the time each visit took place, or shortly thereafter; (3) Dr. Gregory had no apparent reason to exclude information about any hand disorder from those clinic notes; (4) it is reasonable to infer that proper professional conduct would dictate that a fairly complete description of significant health care be recorded in clinic notes; and (5) the lack of any mention in those clinic notes of disordered hand functioning is consistent with the basic activities of daily living Claimant was able to complete, as described by Claimant and her grandmother.  *See* 20 C.F.R. § 404.708.

ALJ's discussion that he concluded Claimant's self-reports of symptoms and resulting limitations, e.g., difficulty writing, weakness and/or difficulty in holding items or grasping things, were not reliable and provided little, if any, support for her claims of severity or functional impairment. (AR 15). It is also reasonably apparent from this record why the ALJ so concluded. *(See* AR 15-18). While a more in-depth discussion on the ALJ's part of Claimant's credibility, or perhaps, just a better organized one, would have been preferred, this Court is able to understand what the ALJ's ultimate conclusions were with respect to Claimant's credibility, the ALJ's reasoning, and the most salient facts upon which he relied in arriving at his conclusions. *See* Social Security Ruling No. 96-7p at **3-4. The Court concludes, based on the discussion in the ALJ's written decision, that the ALJ was aware of the relevant objective medical evidence involved in this issue, Claimant's own description of her subjective complaints, and statements made by and to the health care professionals involved in evaluating this claimed impairment.[8]

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the Claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. *Id.* at pp. 1281-1282. If Claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the Claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* at p. 1281. Such specificity is crucial so as to enable effective judicial review. See *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any

---

[8] Even were we to find that this failure to better articulate the weight given to the credibility of Claimant's subjective complaints was error, we would also conclude that it was harmless error under *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-1197 (9th Cir. 2004). Here, the ALJ provided specific reasons supporting his credibility analysis; there was substantial evidence to support his apparent decision to accord little, if any, weight to Claimant's statements regarding the impacts of her wrist/hand problems; and the ALJ's failure to do more by way of articulation does not negate the validity of his ultimate and obvious credibility conclusion. Consequently, under *Batson*, any error would be deemed harmless and would not warrant reversal. *Id.*

subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").  Grounds for an adverse credibility finding include, but are not limited to, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities and work record, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains, and the lack of adequate explanation for a claimant's failure to follow a prescribed course of treatment.  See *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.

The evidence in this record persuaded the ALJ that many of those grounds existed in this case.  These included Claimant's failure to seek treatment at any time (according to the medical evidence in this record) for the allegedly disabling nerve compression problems in her hands, despite the ease and frequency with which she could have done so; her failure to keep a number of scheduled appointments for her health care conditions (AR 17);  her lack of truthfulness in telling Dr. Shah that Claimant had no access to a health care practitioner for treatment of her carpal tunnel-related impairments; Claimant's ability to button her clothing without difficulty;  her retention of full motor strength in both her arms;  the absence of any need for (or, apparently, any use of ) wrist or hand assistive devices; the absence of any manipulative restrictions recommended by Dr. Shah[9] for non-exertional work-related functions; Claimant's ability to draw and color with her toddler daughter as a part of Claimant's daily or regular routine (AR 16); Claimant's ability to perform virtually all of her daily living tasks that required manual strength and dexterity, as variously described by Claimant throughout these proceedings to different questioners, without struggle or anything more than the occasional mishap; and Claimant's ability to meet the physical and emotional needs of an active toddler/preschooler on a daily basis  – all these suggest "there exist[ed] good reasons for questioning the credibility of the claimant's subjective complaints."  (AR 18).  Those "good reasons" are sufficiently clear and adequately persuasive and are supported by substantial evidence in this record.

---

[9]  Again, Dr. Shah was the only medical source who examined Claimant for wrist and/or hand-related impairments.  Claimant was not treated by any physician or physical or occupational therapist for this condition, according to this record.

12

They satisfy the requirements set forth in *Lester*, 81 F.3d at p. 834.  Consequently, the Court finds no error on this ground.

### 3. Failure to Find Exertional Limitations

As noted earlier, Claimant argues that the ALJ's failure to find any exertional limitations was error because he did not properly analyze or credit the medical opinions of Drs. Shah and Ocrant. Claimant's argument, at least as she articulates it in her opening brief, is premised on the position that her carpal tunnel syndrome produced these functional impairments and did so independent of interaction with any other medically determinable impairment.  (*See* AOB at pp. 9-10).  Claimant's position is essentially that the existence of an impairment is sufficient proof of a disability.  This is simply not so.  *Matthews*, 10 F.3d at p. 680.  It was Claimant's burden to prove that an impairment is of sufficient severity and/or functional impact as to be disabling.  (*Id.*)[10]  The Court concludes that the ALJ's rationale, and the evidentiary support for that rationale, is legally sufficient and proper for assigning *de minimus* weight to the opinions of Drs. Shah and Ocrant, the practitioners upon whose opinions Claimant relies for her position that her wrist/nerve compression disorder produced functional impairments in critical areas.

If Claimant has some other theory of error, the Court does not find it here.  The Ninth Circuit has repeatedly warned that the court cannot "manufacture arguments for an appellant" and therefore this Court will not consider claims that are not actually argued in her opening brief.  *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.1994).  Only those issues argued specifically and distinctly in a party's opening brief will be reviewed.  *Id.*  And "[a] bare assertion of an issue does not

---

[10]  The Court recognizes that SSR. No. 96-8p provides, in pertinent part, that "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do."  SSR. No. 96-8p at *6.  This was not an argument raised by Claimant either here or before the ALJ and the Court does not consider it here in view of those facts. (AR 156-158, 159-173).  *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Morever, as noted immediately below, the issue, even had it been properly raised and argued, was Claimant's to prove, a burden she did not meet, based on this record.

preserve a claim." *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir.2001).

**B.      The ALJ's Evaluation of the Treating Physician's Opinion**

Claimant also argues that the ALJ erred in giving little weight to the opinion of Dr. Jack Gregory, claimant's treating physician, who provided evaluation and care for problems relating to Claimant's mental health disorders.  Claimant contends that Dr. Gregory's opinions were entitled to persuasive, if not controlling, weight and that the ALJ's failure to treat those opinions in that fashion was error.  In support of this argument, Claimant describes the medical care and the functional impacts assessment Dr. Gregory provided (AOB at pp. 6-8), questions the propriety of the weight assigned to Dr. Gregory's position by the ALJ, and cites the Court to legal authority in support of her position.  Specifically, Claimant relies on Social Security Ruling number 96-2p (*see* AOB at p. 8 – "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted"; "Even if a medical source's opinion is not entitled to 'controlling weight,' it is still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927"; and "Even if not given controlling weight, in many cases a treating source opinion will be entitled to the greatest weight and should be adopted") and cites *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), for the principle that the "opinion of a treating physician is given great weight, particularly when it is supported  by the record."  (AOB at p. 8).

The opinion in *Orn* is useful here.

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those

of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. *Id.* § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

...

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." S.S.R. 96-2p at 4, 61 Fed. Reg. at 34,491. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* As we stated in *Reddick*, "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." 157 F.3d at 725 (quoting *Murray*, 722 F.2d at 502).

*Orn*, 495 F.3d at pp. 631, 632-633.

Under the principles set forth in *Orn* and the guidelines contained in SSR No. 96-26, the ALJ did not err in his treatment of Dr. Gregory's opinion. With respect to the functional restrictions imposed by Claimant's mental health disorders, Dr. Gregory's opinion was contradicted in various important aspects by the opinion of the consultative examiner Dr. Lessenger. Dr. Lessenger diagnosed Claimant with a different disorder than the diagnoses assigned by Dr. Gregory. (AR 107). Additionally, it appears that Dr. Lessenger's conclusions were based, in part, on independent clinical findings that resulted from diagnostic testing Dr. Lessenger conducted. (AR 105-108). Consequently, Dr. Lessenger's opinion also constituted substantial evidence and to the extent the opinions of Drs. Gregory and Lessenger were at odds, it was the province of the ALJ to resolve the

conflict. *Andrews*, 53 F.3d at p. 1041. Of course, specific and legitimate reasons must be given in order to substantially or entirely discount the treating source's opinion, if the ALJ's decision is to survive legal muster.

Claimant had been treated by Dr. Gregory for mental health-related impairments beginning in late March of 2005. Since that time, Claimant was seen by Dr. Gregory at least ten times for continuing evaluation and treatment. In April, 2005, Dr. Gregory diagnosed Claimant with bipolar disorder for which he prescribed Geodon, a medication designed to assist in managing certain features of this mood disorder. Dr. Gregory maintained Claimant on this medication throughout the time period involved in these proceedings. Dr. Gregory also added Trazodone[11] to Claimant's medication regimen for her mental health related symptoms in late winter of 2006.

In February of 2007, Dr. Gregory completed a written mental assessment of Claimant (AR 147-151) as well as a Mental Impairment Questionnaire (AR 152-155). Both contain his assessment of the areas in which Claimant's functioning has been impacted by her bipolar disorder and the degree of impairment she experiences in those areas. Among other opinions, Dr. Gregory stated that Claimant was incapable of performing even low stress jobs and that she would be absent more than three times a month due to her impairments or treatment. (AR 154). In Dr. Gregory's opinion, Claimant had moderate difficulty in maintaining social functioning but was markedly limited in her ability to interact appropriately with the general public. (AR 149, 155). Claimant often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (AR 155). Dr. Gregory assessed Claimant as having only slight restrictions in her ability to perform daily living activities. (*Id.*) Because Claimant has never worked, Dr. Gregory could not conclude Claimant had any episodes of deterioration or decompensation in work or work-like settings. (*Id.*)

Dr. Lessenger, the consultative examiner and a licensed clinical psychologist, diagnosed Claimant with chronic post-traumatic stress disorder, based on Dr. Lessenger's mental status examination of Claimant, the clinical interview, and Dr. Lessenger's review of the medical records.

---

[11] Trazodone is an antidepressant. Rothenberg and Chapman, *Dictionary of Medical Terms*, 581, (5th Edition 2006).

(AR 107-108).  In Dr. Lessenger's opinion, Claimant's mental health disorder imposed no functional restrictions on Claimant's ability to perform routine activities of daily living (AR 107); Claimant did have some difficulties in maintaining social functioning (AR 107), although Dr. Lessenger also concluded that Claimant was capable of responding appropriately to co–workers, supervisors and the public as long as Claimant's self-described "bad attitude" (AR 106, 108) did not interfere with Claimant's motivation to do so.  Dr. Lessenger also opined that Claimant had no functional limitations involving concentration, pace or persistence (AR 108); that Claimant was capable of responding appropriately to usual work situations (attendance, safety, etc.); that Claimant had no limitations in dealing with changes in a routine work setting; and that Claimant was able to understand, carry out, and remember simple instructions.  (*Id.*)  Dr. Lessenger further opined that Claimant was likely to have difficulty coping with the stress of a work environment.  According to Dr. Lessenger, Claimant appeared to have benefitted from current medication and would benefit from cognitive/behavioral therapy to address issues of past abuse.  (*Id.*)

Given the divergence between the opinions of Drs. Gregory and Lessenger in the areas of functional limitations with regard to activities of daily living, difficulties in maintaining social functioning in the workplace or in a work-setting, and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, the opinion of treating physician Dr. Gregory is not entitled to controlling weight.  *Orn,* 495 F.3d at pp. 631-632.  If discounted or rejected by the ALJ, specific and legitimate reasons for doing so must be provided.  (*Id.*)

The ALJ gave "little weight to Dr. Gregory's opinion that Claimant was incapable of even low stress jobs, was moderately limited in her ability to understand and remember and carry out detailed instructions, maintain attention and concentration, make simple work-related decisions, complete a normal work-day and work-week without interruptions, get along with co-workers or peers, and respond appropriately to changes in the work setting, and was markedly limited in her ability to work in coordination within a proximity to others and interact appropriately with the general public [citation to record omitted]."  (AR 17).  The basis for discounting Dr. Gregory's opinion in this manner was that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  Although the claimant has received

treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." (AR 17-18). Moreover, "Dr. Gregory apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good cause for questioning the reliability of the claimant's subjective complaints." (*Id.*)

The ALJ discounted Dr. Gregory's opinion in part because the treatment regimen Dr. Gregory prescribed appeared disproportionately limited, given the degree of disability Claimant allegedly experienced. This does not appear to be unreasonable, based on the facts in this record and the reasonable inferences that could be drawn from those facts. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9 Cir. 1982)("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

Dr. Gregory's treatment plan for Claimant was confined to medication. Dr. Levenger recommended the addition of cognitive or behavioral therapies[12] for Claimant, who has serious but prognostically hopeful mental health disorders for which there are effective treatments. Moreover, Claimant presented as a person with the demonstrated capacity to build and maintain some healthy family relationships, run a household with some competence, manage her funds, and organize and provide for the well-being of her pre-school age daughter on a daily and full-time basis. It was not unreasonable to infer that had Claimant's functional limitations been as disabling as Dr. Gregory assessed them to be, more aggressive interventions were indicated. The absence of those interventions may well say something useful about the value of Dr. Gregory's opinion. Consequently, the Court cannot conclude that the ALJ's rationale for discounting Dr. Gregory's opinion on this basis was improper.

The ALJ also gave little weight to Dr. Gregory's opinion as to Claimant's functional limitations because much of that opinion appeared to be based on Claimant's self-report of

---

[12] See *The Merck Manual* (18th edition, 2006), "Treatment" under "Posttraumatic Stress Disorders" at p. 1678 and "Prognosis and Treatment" under "Bipolar Disorders" at pp. 1714-1716. Both discussions list a number of effective therapies for treatment of each of these conditions in addition to treatment with medications.

symptoms. The ALJ questioned the reliability of Claimant's subjective complaints, citing internal inconsistencies discussed in other parts of the ALJ's decision. For example, in her April, 2005 Adult Function Report, Claimant describes her ability to perform the functions of daily activities, including running a household and caring for a toddler as a full-time parent, in ways that demonstrate little, if any, restrictions resulting from her mental impairments. Two months later, in the course of Claimant's examination by Dr. Shah, Claimant described her functional abilities in this area as significantly more restricted than her earlier assessment had portrayed. At the March 2007 administrative hearing, Claimant presented an even bleaker description of what she could and could not do each day to maintain herself and her household in everyday ways.

Claimant's persistence, pace and concentration abilities were impaired by her mental disorder, according to Dr. Gregory. Nevertheless, there is sufficient evidence in this record to support the conclusion that, contrary to what Claimant might have otherwise reported from time to time, Claimant was able to maintain a satisfactory level of attention and organization in some important areas of functioning. Claimant managed her medication regimen without reminders, nor did she need any significant prompts to conduct other tasks involved in performing daily living activities for herself.

Claimant's descriptions of her inability to function appropriately in social settings was contradicted by the observations of the Social Security Administration's field office staff during the course of early interviews with Claimant. (AR 17). Moreover, Dr. Lessenger suggests in her assessment of Claimant's functional abilities that some of Claimant's alleged impairment in social functioning and adaptive behaviors in a work-place may be the result of a "bad attitude" rather than genuine symptomatology. (*Id.*)

These various inconsistencies in Claimant's statements provide sufficient evidence to support the ALJ's finding that Claimant's subjective reporting may not be as reliable or as accurate as Dr. Gregory apparently found it to be.

Dr. Gregory's opinion was contradicted by or inconsistent with other substantial evidence in this record, including the medical opinion of Dr. Lessenger. For that reason, Dr. Gregory's opinion was not entitled to controlling weight. It was entitled to be considered and evaluated thoughtfully,

and the Court finds the ALJ's decision sufficient in that respect. As a treating physician whose

opinion is contradicted by other substantial evidence or is otherwise less than well-supported,

Dr. Gregory's opinion could properly be rejected only where specific and legitimate reasons are

given. Although the ALJ's discussion was brief (*cf. Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-1201

(9th Cir. 1999) – all that is required is "an adequate statement of the subordinate factual foundations

on which the ultimate factual conclusions are based so that a reviewing court may know the basis for

the decision" (citations and internal quotation marks omitted)), the ALJ's reasons were both specific

and legitimate and were based on substantial evidence in this record.

### C.    The ALJ's Evaluation of the Statement of Claimant's Grandmother

Claimant's final claim of error rests on the "consideration" given to the Adult Function

statement of the Claimant's grandmother by the ALJ. More specifically, Claimant argues that "[t]o

the extent that [the claimant's grandmother's] statement supported Appellant's disability claim, the

ALJ properly [*sic*] rejected it." (AOB at p. 11.) (No doubt, Claimant intended to say "improperly.")

Claimant properly cites this Court to the opinion in *Smolen,* 80 F.3d at p. 1288 for the

proposition that third party witness testimony may be rejected "only if [the adjudicator] gives reasons

germane to each witness whose testimony he rejects."   The ALJ did so here.

The ALJ did not disregard the information provided by claimant's grandmother. He began

with a summary of  relevant information Ms. Wopinksi offered.

> [C]laimant's grandmother, Katherine Wopinski, reported that the claimant
> played cards, watched television, took care of her husband and child,
> cooked, washed laundry, had no problems caring for her personal needs,
> cleaned, watered the lawn and plants, shopped with her husband, paid
> bills, read to her daughter, and colored ... but did not go out alone because
> of panic attacks or get along with people she did not know. [Citation
> omitted.] (AR 16).

The ALJ noted that "Ms. Wopinski also said that Claimant's condition 'affects' certain activities,

such as seeing, completing tasks, concentrating, understanding, following instructions, and getting

along with others, but failed to quantify how those areas were affected, and thus [her statement] is

given little weight." (AR 16).

The ALJ essentially found Ms. Wopinski's information about claimant's ability to function in

areas critical to the successful performance of basic work activities was too vague to be useful in reaching a conclusion as to disability. He discounted her statement for that reason. The *Smolen* standard was satisfied.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds no error in the ALJ's analysis, which was based on proper legal standards and supported by substantial evidence in the record as a whole. Accordingly, the Court HEREBY ORDERS as follows:

    1.    Plaintiff's Social Security complaint, Doc. 1, is DENIED; and

    2.    The Clerk of the Court IS DIRECTED TO ENTER JUDGMENT for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Erica K. Leal.

IT IS SO ORDERED.

Dated: __March 25, 2009__                                            __/s/ Theresa A. Goldner__
                                                                                        UNITED STATES MAGISTRATE JUDGE